UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jennifer Lizzol;
Michael Lizzol;
and T.G.,
    Plaintiffs

v.                                      Case No. 15-cv-100-SM
                                        Opinion No. 2017 DNH 183
Brothers Property
Management Corporation;
Out Back Kayak, Inc. OBK;
and Martin Welch,
    Defendants

**O R D E R**

Plaintiffs have filed a motion to amend or alter the judgment that was entered dismissing their negligence claims, based on contractual waivers they signed. See Fed. R. Civ. P. 59(e). The seriousness of plaintiffs' injuries and the negligent conduct described in the complaint understandably move counsel to seek some way around the negligence waiver principles established in McGrath v. SNH Development, Inc., 158 N.H. 540 (2009). But there is no avoiding them in this case. New Hampshire law applies and it is not ambiguous. Having carefully considered plaintiffs' motion, the court is constrained to deny it.

**Background**

This case turns on the enforceability of contractual waivers of negligence claims that plaintiffs executed prior to participating in a guided snowmobile tour. During the tour plaintiffs' snowmobile crashed, causing them serious injuries. Defendants moved for summary judgment, asserting that plaintiffs' claims - all of which sound in negligence - are barred by the waivers they executed. In opposing defendants' motion, plaintiffs advanced five arguments:

> (A) the Release does not apply to claims arising from negligent instruction or guidance on the trails; (B) the Release does not state with sufficient clarity that OBK is a party to the contract; (C) the Release is not enforceable against Jennifer Lizzol because she did not properly sign the contract; (D) the Release is unenforceable because it violates public policy; and (E) the Release is invalid because plaintiffs were fraudulently induced to sign.

Plaintiffs' Objection to Summary Judgment (document no. 28-1) at 4. By prior order (document no. 30), the court addressed and rejected each of plaintiffs' arguments, concluding that: the Release was sufficiently broad to cover defendants' allegedly negligent instruction and guidance, id. at 7-11; the Release does apply to OBK, id. at 12-15; Jennifer Lizzol's "failure to initial certain paragraphs of the Release does not preclude its enforcement" against her, id. at 15; the Release is not unenforceable on grounds that it violates public policy, id. at

20-22; and "the plaintiffs have not sufficiently established fraud in the inducement," id. at 22.  Accordingly, the court granted defendants' motion for summary judgment.

In their motion to alter or amend judgment, plaintiffs assert that the court misapprehended their argument that the contractual waivers of negligence claims are unenforceable on public policy grounds.  As a consequence, say plaintiffs, the court erred as a matter of law in granting defendants' motion for summary judgment.  The court disagrees.

**Standard of Review**

As the court of appeals has repeatedly noted, Rule 59(e) is "an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citations omitted).  A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." Quality Cleaning Prods. R.C. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 208 (1st Cir. 2015) (citations and internal punctuation omitted).  Consequently, this court may grant a motion to amend judgment only "if the original judgment evidenced a manifest error of law, if there is newly discovered

evidence, or in certain other narrow situations." Glob. NAPs, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007) (citations omitted).

Here, as noted above, plaintiffs assert the court committed a manifest error of law in construing New Hampshire law to permit enforcement of their contractual waivers of negligence claims. Although it is not entirely clear that each of the plaintiffs' arguments advanced on reconsideration was fairly presented in opposition to summary judgment, the court will address them nonetheless.

**Discussion**

While it may sometimes operate in ways that are harsh, and differently from the rule in other states, New Hampshire's law on exculpatory contracts is clear: written contracts waiving negligence claims are enforceable if those contracts do not violate public policy, a reasonable person would understand the impact of the waiver, and the asserted claims fall within the contemplation of the parties when they executed the waiver. McGrath, 158 N.H. at 542. As the court previously held, all of those conditions are met in this case and the waivers are enforceable under McGrath.

Plaintiffs' memoranda are difficult to follow but they seem to be positing different theories of avoidance than those pressed in their opposition to summary judgment. On reconsideration they seem to say that their instructor/guide acted "recklessly" by providing inadequate instruction and guidance on the snowmobile tour — riding well ahead of the group, traveling at excessive speeds, and compelling them to drive beyond their limited (novice) abilities in order to catch up with him. That is, plaintiffs characterize defendants' failure to adequately instruct in proper snowmobile operation, their failure to properly guide the tour, and their failure to "make a good faith effort" to insure their safety as "recklessness" amounting to "bad faith." Thus, say plaintiffs, defendants breached the implied covenant of good faith and fair dealing implied in every New Hampshire contract, so the contract's waiver of negligence provision should not be enforced against them. Plaintiffs also add that the contractual waivers are unenforceable because defendants' bad faith contract performance contravenes public policy and enforcement of such waivers would place public safety at risk.

Plaintiffs' general argument suffers from two basic flaws. First, even construing their complaint (as well as the evidence presented in opposition to summary judgment), in the light most

favorable to them, it does not fairly describe conduct on the part of defendants that rises to the level of "recklessness" - at least not of the sort that might render the contractual negligence waivers unenforceable. And, second, even if defendants had "recklessly" performed their obligations under the parties' contract, or even if they "failed to make a good faith effort" to ensure plaintiffs' safety, that fact would not, under the circumstances of this case, constitute a breach of the implied covenant of good faith and fair dealing. Nor would it give rise to a basis for invalidating their contractual releases on public policy grounds.

I.  Plaintiffs' Assertions of "Recklessness"

Plaintiffs readily concede that their complaint does not assert an intentional tort claim. Nevertheless, they say both the complaint and the evidence produced in opposition to summary judgment reference facts from which it can plausibly be concluded that their snowmobile instructor and guide acted "recklessly." There is, however, considerable doubt about that, because plaintiffs' description of his conduct is fairly conventional. Plaintiffs plead, directly or implicitly, a lack of care, lack of appropriate attention, inadequate supervision, inadequate instruction, driving too fast, and going too far ahead and leaving the group behind on the trail — all hallmarks

6

of negligence claims, but falling short of describing conduct consistent with New Hampshire's use of the term "reckless."

The New Hampshire Supreme Court generally refers favorably to the Restatement of Torts and has done so with respect to its description of "reckless" conduct:

> Under the Restatement [(Second) of Torts], § 500, at 587 (1965), conduct is "reckless" if it "would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such a risk is substantially greater than that which is necessary to make his conduct negligent." Id. The conduct "must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." Id. comment a at 588.

Boulter v. Eli & Besse Cohen Found., 166 N.H. 414, 421 (2014).

Moreover, as the court noted in Thompson v. Forest, 136 N.H. 215, 220 (1992), a litigant's characterization of conduct as "wanton and reckless" is not particularly useful in identifying the line separating negligence and intentional torts because, "willful, wanton and reckless conduct may, or may not, be the basis for a properly pleaded intentional tort." "Recklessness" as plaintiffs mean the term to be understood here — equating to bad faith in contract performance — must, at a minimum, describe conduct qualifying as an intentional tort

(i.e., more than negligence), that is, "where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty." Id. (quoting W.P. Keeton, et al., Prosser and Keeton on the Law of Torts § 8 (5th ed. 1984)). Otherwise, negligent acts could invalidate a contract provision meant to waive claims for those very acts of negligence, thereby rendering such contractual waivers meaningless - something plainly inconsistent with established New Hampshire law.

Whether conduct amounting to "recklessness" in contract performance will operate to negate waivers of negligence under New Hampshire law remains to be seen. But here, notwithstanding the descriptive adjectives employed by plaintiffs, the facts and allegations pled do not suggest that, in the mind of the instructor/guide, there was "a substantial certainty" that serious foreseeable harm would occur based on his conduct. And, of course, plaintiffs do not allege the substantial certainty of their injuries. See Thompson, 136 N.H. at 220.

Even taken in the light most favorable to plaintiffs, the facts pled and the evidence produced would not support a finding that the guide's conduct involved an unreasonable risk of physical harm "substantially greater than is required for

ordinary negligence or that the risk was one involving an easily perceptible danger of death or substantial physical harm." Boulter, 166 N.H. at 422. That is, the record is not susceptible to a construction that supports plaintiffs' assertions of "reckless" conduct amounting to either an intentional tort or a material breach of the parties' contract.

Of course, it is possible that plaintiffs are using the term "recklessness" to describe conduct that is something akin to "grossly negligent," but short of intentionally wrongful. If that is their claim, it too fails. New Hampshire's common law does not recognize distinctions among varying degrees of negligence. See, e.g., Barnes v. New Hampshire Karting Assn., 128 N.H. 102, 108-09 (1986). Consequently, if plaintiffs are using the term "reckless" to mean a particularly egregious form of negligence, their argument is unavailing. See, e.g., DeCormier v. Harley-Davidson Motor Co. Group, 446 S.W.3d 668, 671 (Mo. 2014) ("While exculpatory agreements will be strictly construed, this Court will enforce exculpatory agreements to protect a party from liability for their own negligence. Ms. DeCormier cannot avoid this rule by alleging Harley-Davidson and Gateway were grossly negligent because Missouri courts do not recognize degrees of negligence at common law.") (citation omitted).

9

The United States District Court for the District of California has addressed issues similar to those advanced by plaintiffs and its reasoning is instructive. In that case, as here:

> Plaintiffs also argue that Defendants "in bad faith breached the 'waiver' contract" and that Defendants' "deliberate indifference, gross negligence, and reckless conduct represent a failure of consideration." Both arguments fail. Plaintiffs provide no explanations for how negligent or reckless conduct which they allege occurred after they signed the release affects consideration, and the Court can see no connection. Nor do they identify how Defendants breached the contract. If Plaintiffs mean to say that Defendants' negligence amounted to a breach of the release contract, such an argument is meritless. Negligence, and any injury which might result, is precisely that for which the contract releases Defendants.

R.H. v. Los Gatos Union School District, 33 F. Supp. 3d 1138, 1171 (N.D. Calif. 2014) (citations omitted). So it is in this case. It was not "reckless" or in "bad faith" for defendants to have engaged in conduct expressly permitted by plaintiffs' releases. Again, the Los Gatos opinion is helpful:

> [B]ehavior which is authorized is not wrongful and, logically, cannot be the basis of a [negligence] action. "In its most basic sense, assumption of risk means that the plaintiff, in advance, has given his express consent to relieve the defendant of an obligation of conduct toward

10

> him, and to take his chances of injury from a
> known risk arising from what the defendant is to
> do or leave undone . . . The result is that the
> defendant is relieved of legal duty to the
> plaintiff; and being under no duty, he cannot be
> charged with negligence." Prosser & Keeton,
> Torts (5th ed.1984) § 68, at 480-481. By
> contractually agreeing to assume all the risks of
> participation on the Fisher wrestling team and by
> expressly releasing Defendants from liability for
> any injuries sustained in connection with
> participation on the team, Plaintiffs consented
> to certain acts or omissions by Defendants which
> might otherwise have constituted negligence.

Id. at 1171 (emphasis in original).

II. Good Faith and Fair Dealing.

As noted above, plaintiffs also assert that, by acting "recklessly," defendants breached the implied covenant of good faith and fair dealing. Consequently, say plaintiffs' their contractual waivers are unenforceable. But, even if plaintiffs' complaint had adequately pled facts from which one could reasonably conclude that their instructor/guide acted "recklessly," such conduct would not - at least under the circumstances of this case - constitute a breach of the implied covenant of good faith and fair dealing.

The covenant of good faith and fair dealing implied in every New Hampshire contract is a doctrine that is often misunderstood and routinely (improperly) invoked as a general

11

equitable catch-all.  Under New Hampshire common law, "[t]he various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance."  J & M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 724 (2011) (citation omitted).  Here, somewhat unhelpfully, plaintiffs point to the generally understood principle that there "is an implied covenant in every contractual relationship that the parties will carry out their obligations in good faith."  Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 920 (1981).  That is undeniable.  However, what is meant by "good faith" depends upon the context in which it is invoked.  See generally Centronics Corp. v. Genicom Corp., 132 N.H. 133, 140–41 (1989) (discussing the difficulty of defining "good faith" in the context of each of the three categories of contract cases in which it arises).

It is, therefore, important to understand precisely how, according to plaintiffs, defendants breached the implied covenant of good faith and fair dealing.  In this case, plaintiffs invoke the third category of cases in which the implied covenant of good faith is implicated: those situations in which one party's exercise of contractually-vested discretion is subject to an implicit limitation in the performance of its

12

contractual obligations.  See Plaintiffs' Memorandum at 5 ("The present case relates to the third category: contractual performance.").  But, as the New Hampshire Supreme Court has observed, that "third category is comparatively narrow." Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009).  Nevertheless, the court noted that, "its broader function is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations, as well as with common standards of decency, fairness and reasonableness."  Id. (citation and internal punctuation omitted).  In the context of this case, the implied covenant of good faith and fair dealing serves to preclude one party from exercising its contractually-vested discretion in a manner that would "thwart a reasonable expectation of the other party, going to the essence of the contract."  Centronics, 132 N.H. at 141.

Critically, not every contract breach, however blatant or extensive, constitutes a breach of the covenant of good faith and fair dealing.  Plaintiffs' complaint does not assert that no instruction was given, or that no tour guidance was provided. Instead, they assert that their tour guide "did not make a good faith effort in carrying out his duties as an instructor and guide."  Plaintiff's Memorandum (document no. 32-1) at 4.  That, in turn, say plaintiffs, constitutes a breach of the covenant of

13

good faith and fair dealing. It does not. Merely asserting that their instructor failed to make a "good faith effort" to uphold his obligations under the contract is <u>not</u> sufficient to state a claim that he breached his obligations of good faith and fair dealing by exercising contractually vested discretion in a manner that thwarted a reasonable expectation of plaintiffs, going to the essence of the contract. Here, the "essence" of the contract was straight forward. Defendants offered snowmobile lessons and a guided snowmobile tour in exchange for both a fee and a release of all negligence claims that might arise from plaintiffs' participation in that recreational activity.

Fundamentally, plaintiffs' argument misconstrues New Hampshire's law on good faith and fair dealing. Contrary to their suggestion, New Hampshire law does not impose a blanket requirement upon every contracting party to make a "good faith effort" to perform all of its contractually-assumed obligations. Instead, as applied to <u>contract performance</u>, the implied covenant of good faith and fair dealing serves as an implicit limitation on one party's <u>contractually-vested discretion</u>. <u>See</u> <u>Centronics</u>, 132 N.H. at 143 ("Despite the variety of their fact patterns, these cases illustrate a common rule: under an agreement that appears by word or silence to <u>invest one party</u>

<u>with a degree of discretion</u> in performance <u>sufficient to deprive another party</u> of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to <u>observe reasonable limits in exercising that discretion</u>, consistent with the parties' purpose or purposes in contracting.") (emphasis supplied). Consequently, in order to prevail on a claim that a defendant violated the covenant of good faith and fair dealing in its performance of a contract, a plaintiff must demonstrate the following:

1. The contract allows or confers upon the defendant a degree of discretion in the performance of its obligations tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value; and

2. The defendant's exercise of that discretion exceeded the limits of reasonableness; and

3. The damages of which plaintiff complains were caused by defendant's abuse of discretion.

See <u>Centronics</u>, 132 N.H. at 144. When plaintiffs' burden is appropriately phrased, it is plain that their claims against defendants do not properly invoke the covenant of good faith and fair dealing. The contract at issue simply did not vest defendants with a degree of discretion sufficient to deprive plaintiffs of a substantial portion of the value of the contract. Necessarily, then, defendants did not abuse that

15

(nonexistent) discretion. Simply claiming, without more, that defendants did not act in "good faith" in carrying out their contractual obligations is insufficient to invoke the covenant of good faith and fair dealing as it relates to contract performance.

When they executed the contractual waivers of negligence claims, plaintiffs necessarily understood that they were assuming a risk of serious injury arising out of their participation in the snowmobiling activity and that such risk included injury that might be caused by defendants' negligent acts. Their reasonable and justified expectations, then, included an understanding that if they sustained injuries because one or more defendants was negligent (as alleged in the complaint), they had contractually waived all negligence claims related to the activity, and could not recover damages.

Construing the contract as conditioning enforcement of the negligence liability waivers on defendants' non-negligent performance of their contractual obligations would be inconsistent with New Hampshire law. And, plaintiffs cannot plead around their waivers by alleging that defendants violated the implied covenant of good faith and fair dealing by acting in

16

a "reckless" manner or by failing to make a "good faith effort" to perform their duties under the contract.

III. Public Policy.

Finally, plaintiffs assert that their negligence waivers should be deemed unenforceable because enforcing them would contravene public policy and tend to imperil or interfere with public welfare or safety. See McGrath 158 N.H. at 543. Enforcement of those waivers, say plaintiffs, would tend to interfere with public safety because it would relieve defendants from liability for the "reckless" and "bad faith" conduct that led to their injuries. But a similar argument was made and rejected in McGrath. There, the plaintiff, a snowboarder, was struck by a snowmobile. She argued that defendant's operation of the snowmobile both negligently and in contravention of safety laws should negate her negligence waiver as being against public policy. The Court rejected that argument:

> Irrespective of the statute, the plaintiff has voluntarily agreed not to hold the ski area, or its employees, liable for injuries resulting from negligence so that she may obtain a season ski pass. Therefore, we conclude the agreements do not contravene public policy as injurious to the interests
>
> of the public, violative of a public statute or interfering with the public welfare.

McGrath, 158 N.H. at 543.

Negligent instruction and supervision with respect to the snowmobile tour in which plaintiffs participated no doubt posed a risk to their personal safety.  But, again, the risk of injury due to defendants' potential negligence was the subject of the waiver provisions.  It does not follow that a contractual waiver of negligence claims with respect to recreational activity contravenes public policy because negligent conduct in such an environment puts the participants' safety at risk.

But, say plaintiffs, it is not the mere exposure to risks to their safety that contravenes public policy, but exposure to those risks as animated by "reckless" and "bad faith" conduct. The so-called "recklessness" and "bad faith" referenced here, however, is at best negligence; it is not the equivalent of an intentional tort, or an intentional or complete failure to perform.  The waivers in this case do not contravene public policy as plaintiffs argue the point.

## Conclusion

Plaintiffs' arguments are imaginative but, substantively, they look like an impermissible appeal to alter well-established common law. Along those lines, plaintiffs seem to assert that the common law of New Hampshire should not permit the waiver of negligence claims when the negligent conduct at issue rises to some level of "recklessness" or is the product of one party's failure to make a "good faith effort" to carry out its contractual duties. Simply stated, that is not consistent with existing New Hampshire law.

The claims described in the complaint all sound in negligence. Negligence claims can be waived. And, as previously determined, plaintiffs waived their negligence claims here. There are no intentional tort or other causes of action asserted in the complaint and, as mentioned, New Hampshire law does not draw distinctions among culpable degrees of negligence. See Barnes, 128 N.H. at 108-09; Lee v. Chamberlain, 84 N.H. 182, 188 (1929). Finally, the grounds upon which plaintiffs seek to invalidate their waivers are not consistent with applicable New Hampshire law.

For the foregoing reasons, plaintiffs' Motion to Amend or Alter Judgment (document no. 32) is denied.

**SO ORDERED.**

_/s/ Steven J. McAuliffe_
Steven J. McAuliffe
United States District Judge

September 6, 2017

cc: Philip R. Waystack, Jr., Esq.
    Sandra L. Cabrera, Esq.
    Paul B. Kleinman, Esq.